1  VALENTI LAW APC
2  Matthew D. Valenti (SBN 253978)
   10174 Austin Drive #1116
3  Spring Valley, CA 91979
   Phone: (619) 540-2189
4  E-mail: mattvalenti@valentilawapc.com
5
   Attorney for Plaintiffs Toni Saia and Adam Cruz
6
7
8
9              UNITED STATES DISTRICT COURT
10            SOUTHERN DISTRICT OF CALIFORNIA
11
12  TONY SAIA and ADAM CRUZ,          Case No.: **'25 CV 2701 RBM KSC**
13            Plaintiffs,
                                       COMPLAINT for Injunctive Relief
14  vs.                                and Damages for Violations of:
15
16  H. G. FENTON COMPANY; FENTON       1. The Fair Housing Amendments
17  MISSION VALLEY LLC; and DOES          Act of 1988, 42 U.S.C. §3601 *et*
    1-10,                                 *seq.*
18
19            Defendants.             2. California Fair Employment and
                                          Housing Act, Cal. Gov. Code
20                                        §12955 *et seq.*
21                                    3. The Americans With Disabilities
22                                       Act, 42 U.S.C. §12101, *et seq.*
23                                    4. California Unruh Civil Rights
24                                       Act, Cal. Civ. Code §51
25                                    5. California Disabled Persons Act,
                                         Cal. Civ. Code § 54 *et seq.*
26
27                                    6. Negligence, Cal. Civ. Code §1714
28

*"It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States."* 42 U.S.C. §3601.

*"It is the policy of [the State of California] to encourage and enable individuals with a disability to participate fully in the social and economic life of the state ..."* Cal. Gov. Code §19230(a).

*"[T]he continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."* 42 U.S.C. §12101(a)(8).

## INTRODUCTION.

1.    This is an action for injunctive relief and damages against H. G. FENTON COMPANY; FENTON MISSION VALLEY LLC; and DOES 1-10, ("Defendants"), for housing discrimination and public accommodation discrimination based on disability.

2.    Plaintiffs TONI SAIA, PH.D. ("Dr. Saia" or "Plaintiff Dr. Saia") and ADAM CRUZ ("Mr. Cruz" or "Plaintiff Cruz") ("Plaintiffs") are tenants at Defendants' apartment complex, known as the Club River Run Apartment Homes ("Club River Run") located in the Mission Valley neighborhood of San Diego.

3.    Plaintiffs allege that Defendants have discriminated against them by, *inter alia*: failing to make Club River Run's leasing and management office, parcel lockers, gymnasium, pool, and other common areas and amenities wheelchair accessible; refusing Plaintiffs' repeated requests for reasonable accommodations, including, *inter alia*, a platform lift that operates in safe working order, an accessible parking space, and an accessible mailbox; and interfering, coercing, and/or intimidating Plaintiffs on account of Plaintiffs' exercise of their rights.

4.    This action is brought pursuant to the Fair Housing Amendments Act of 1988, 42 U.S.C. §3601 *et seq.*; the California Fair Employment and Housing Act, Cal. Gov. Code §12955 *et seq.*; the Americans With Disabilities Act, 42

U.S.C. §12101, *et seq*.; the California Unruh Civil Rights Act, Cal. Civ. Code §51; and the California Disabled Persons Act, Cal. Civ. Code § 54 *et seq.*

5.     Plaintiffs also assert claims for negligence pursuant to Cal. Civ. Code §1714, as an additional or alternative theory of liability for, *inter alia*, negligent supervision and negligent inspection, maintenance, and repair of Defendants' premises resulting in injuries sustained by Plaintiff Dr. Saia.

6.     Through this action, Plaintiffs seek injunctive relief, actual and punitive damages, reasonable attorney's fees, and costs of suit.

## JURISDICTION AND VENUE.

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (a)(4) for violations of the Fair Housing Amendments Act, 24 U.S.C. §3601, *et seq.*, and the Americans with Disabilities Act of 1990, U.S.C. §12101, *et seq.*

8.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear and determine Plaintiffs' state law claims because they are related to Plaintiffs' federal claims and arise out of a common nucleus of operative facts. Plaintiffs' state and federal claims form part of the same case or controversy under Article III of the United States Constitution.

9.     Venue is proper in the Southern District of California pursuant to 28 U.S.C. U.S.C. §1391(b) because the acts and omissions giving rise to Plaintiffs' claims occurred in this District, the property that is the subject of the action is situated in this District, and the Defendants conduct business in this District.

## PARTIES.

10.     Plaintiff Dr. Saia is a California resident and a qualified physically disabled person. She has cerebral palsy and uses a wheelchair for mobility.

11.     Plaintiff Cruz is a California resident and a qualified physically disabled person. He has Arthrogryposis and uses a wheelchair for mobility.

12.    Plaintiffs are and at all times herein relevant, were "handicapped persons" as defined by 42 U.S.C. §3602, and a "person with a disability" as defined in 29 U.S.C. §705(9)(B), California Government Code §12926, the Unruh Civil Rights Act, California Civil Code §51, and California Civil Code §3345.

13.    Plaintiffs are domestic partners who rent the same unit in Defendants' apartment complex. Both Plaintiffs are lessees. Their occupancy began on or around July 26, 2023, and has continued uninterrupted to the current date.

14.    Defendants H. G. Fenton Company, Fenton Mission Valley LLC, and DOES 1-10 are and were the owners, operators, or managers of the apartment residence known as "Club River Run Apartment Homes," located at 10085 Rio San Diego Drive, San Diego, CA 92108 ("Property" or "Club River Run"). Defendants maintain a primary business address at 7577 Mission Valley Road, San Diego, CA 92108.

15.    Defendants are each a "person" within the meaning of the FHA, 42 U.S.C. § 3602(d); an "owner" within the meaning of FEHA, Government Code §12927(e); a "public accommodation" under the ADA, 42 U.S. Code § 12181(7); a "business establishment" under the Unruh Act, Civil Code §51; and a "person[] renting, leasing, or otherwise providing real property for compensation" under the CDPA, Cal. Civ. Code § 54.1(b)(3)(B).

16.    Defendants are responsible for overseeing the management, property maintenance, and enforcement of living rules at the Property.

17.    Defendants' leasing and management office at the Property is open to the public, a place of public accommodation, and a business establishment.

18.    On information and belief, Defendants' pool, gym, and tennis courts at the Property are open to the public, places of public accommodation, and business establishments.

19.    Plaintiffs do not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their

relative responsibilities in causing the violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiffs are informed and believe that each of the Defendants herein, including DOES 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiffs will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

20.    Plaintiffs allege that the Defendants have been and are the owners, franchisees, lessees, general partners, limited partners, agents, trustees, employees, subsidiaries, partner companies and/or joint ventures of each of the other Defendants, and performed all acts and omissions stated herein within the course and scope of such relationships causing the damages complained of herein.

## FACTS.

21.    At around 6:15 a.m. on the morning of January 29, 2025, Plaintiff Dr. Toni Saia—a professor of Rehabilitation Studies, an expert on disability, and a disabled wheelchair user—left her Mission Valley apartment in the Club River Run Apartment Homes ("Club River Run") thinking she would soon be in the apartment complex's gymnasium working out with her new personal trainer. Unfortunately, her planned workout was not to be. Instead, on her way to the gym, Dr. Saia soon found herself stranded in the apartment complex's malfunctioning platform lift, halfway between the ground level and the upper level.

22.    The platform lift at Club River Run is located next to a staircase leading to the leasing and property management office. When the lift is in working order, which is sporadic, it provides the only accessible route to that office, the parcel lockers, the gym, pool, basketball court, and other amenities.

23.    On that morning, Dr. Saia anticipated meeting her personal trainer at the gym. It was the very first session she had arranged with him, and she looked forward to the workout session. Rather than meeting him for the first time in the

gym, however, she would end up meeting him while stranded above the ground in the platform lift.

24.     While attempting to use the platform lift to travel to the upper level to access the route to the gym, the lift stopped operating about halfway up. Dr. Saia tried numerous times to use the controls to make the lift operate again, but to no avail. The lift would neither complete its ascent to the upper level nor descend back to the ground level.

25.     The temperature was in the low 50ºs Fahrenheit as Dr. Saia was left essentially imprisoned in the platform lift. She was wearing only light workout clothes, since she had anticipated that she would be outside for a short time before entering the warm gym. Her extremities, which are normally sensitive to cold conditions due to her disability, became painfully cold and turned blue. She felt trapped, in danger, and utterly humiliated.

26.     Dr. Saia used her cell phone to call the "Emergency" maintenance number given to her by the apartment complex's management. She spoke with an individual and explained the situation. The response she received was insulting and dismissive—that the emergency custodian was in Tijuana and it would be a burden for him to get out of bed and drive to Club River Run to attend to the platform lift.

27.     As it was very early in the morning, there were no property management staff present and no other residents were around to see Dr. Saia's plight. Eventually Dr. Saia's personal trainer arrived and found her still stranded in the platform lift. He tried several times to get the lift to work, but to no avail.

28.     Feeling extremely cold, anxious, embarrassed, and frustrated by being trapped so long in the platform lift, Dr. Saia felt compelled to free herself. Despite the difficulty and extreme danger involved, she stood on top of her wheelchair, climbed over the platform lift's side panel, and lowered herself onto the edge of a retaining wall next to the stairs. Then she had to balance perilously next to a large

ceramic planter in an area that measures just a few inches wide. From there her personal trainer assisted her as she lowered herself down.

29.    A recent photo below shows the platform lift, with an all too common "Out of Order" sign posted on it (inset).



30.   Dr. Saia suffered scrapes, abrasions, and bruises due to her escape from the malfunctioning platform lift, in addition to painful coldness in her extremities which persisted for hours.

31.   Later that day, Dr. Saia was compelled to walk up the stairs, with great difficulty and discomfort, in order to enter the management office and complain about her experience and to demand the platform lift be fixed. She met with Andii Gutsch, the Resident Manager. Ms. Gutsch claimed that the lift was malfunctioning because "we are waiting on a part." No explanation was given why the lift was still in operation if it was in need of a new part. Ms. Gutsch was unconcerned and nonchalant about Dr. Saia's horrific experience.

32.   Ms. Gutsch offered no solution other than advising Dr. Saia that the only other route she and Mr. Cruz could take to access the management office, parcel lockers, the gym, and other amenities at Club River Run was an approximately 400' circuitous route starting from a sloped sidewalk out into the parking lot, behind parked cars and down the complex's steeply sloped driveway, out onto the public right-of-way sidewalk, and back onto the complex's property up a steeply sloped path of loose gravel leading to a locked gate that opens outward. Because the gate opens outward it is very difficult and dangerous for Dr. Saia to open without the risk of rolling backwards down the steep slope and potentially falling out of her wheelchair and being seriously injured.

33.   This lengthy route presents hardships for Dr. Saia and Mr. Cruz at every stage and is nowhere close to being accessible for wheelchair users.

34.   Dr. Saia and Mr. Cruz still must take this inaccessible route whenever the platform lift is out of service (which is frequently) or when it is ostensibly "in service" but they don't want to risk becoming trapped in it.

35.   The first photo below is a satellite view from Google maps which shows the inaccessible alternate route with distance measurements. The second photo is a Google "street view" that shows where Dr. Saia and Mr. Cruz must enter

the parking lot, travel down the busy, sloped driveway behind as many as four parked cars, and out of the complex onto the public sidewalk.

36.    Following those photos are two photos showing the gravel path leading to the locked gate. Although the path has since been paved, it remains extremely steep and still leads to a locked gate that opens outward.









37.     Despite Defendants being fully on notice of the malfunctioning and unreliable platform lift, on or around March 18, 2025—nearly two months after Dr. Saia's incident—Mr. Cruz also become stuck partway in the platform lift. After numerous attempts to make it function, and only by Mr. Cruz using a significant amount of force on its controls which many disabled people would be unable to accomplish, did the platform lift finally resume operation and allow him to exit. The photo below is a screenshot from a video he took of the incident.



38.     In fact, to this day Club River Run's platform lift continues to be broken, unreliable, and out of service on a frequent basis. Even when it is ostensibly "in service," Dr. Saia and Mr. Cruz are afraid to use it and risk becoming trapped in it.

39.     Unfortunately, these frequent, humiliating and frightening experiences with the platform lift are not the only times Dr. Saia and Mr. Cruz have experienced willful discrimination by Defendants.

40.     After they first moved into the apartment complex in July 2023, they repeatedly requested an accessible parking space. Their requests were ignored and thereby effectively denied. The result is that they must park in a standard parking space, which can make it difficult or impossible to enter their vehicle from their wheelchairs. This space also requires them to travel from the nearest curb cut, through the parking lot and behind parked cars to reach their vehicle, and of course, reverse that route when arriving back home. Accessible routes cannot be located behind parked cars, as travelling behind parked cars is inherently dangerous for wheelchair users, who are lower to the ground and often cannot be seen by drivers backing out.

41.     Dr. Saia and Mr. Cruz have also repeatedly made a simple but important request to have their mailbox relocated to the lower line of mailboxes in Club River Run's apartment mailbox cluster, so that Dr. Saia and Mr. Cruz don't have to stand or strain to reach it, as is currently the case. Although postal workers have confirmed that moving their mailbox can be easily accomplished, Defendants have ignored and thereby effectively denied this accommodation request.

42.     Dr. Saia and Mr. Cruz have also been denied very simple and small accommodation requests—such as when Dr. Saia requested to have a package brought to her apartment so that she would not have to either risk getting stuck on a malfunctioning platform lift or deal with the difficulty and discomfort of retrieving the package via the lengthy and difficult alternate route described above.

43.    In addition, Dr. Saia has been visually monitored by management staff including Property Manager Jose Soto when she uses the gym. She has been spoken to in a patronizing, dismissive manner and treated with thinly veiled contempt by management ever since she complained about her experience in the malfunctioning lift. This treatment appears retaliatory and designed to interfere with her right to advocate for accessibility.

44.    Both Dr. Saia and Mr. Cruz must deal with these discriminatory inaccessible conditions every day of their life, multiple times a day. Club River Run is their home, the place where they should feel safe, comfortable and welcome. Yet every day they feel that they don't really belong there, that because of their disabilities they have to endure difficulties and indignities that other residents never have to face. And time after time, Defendants' property managers and staff have expressed little or no concern for their safety and accessibility needs. Only after numerous informal complaints and requests have gone unheeded and ignored do they bring this legal action to compel Defendants to follow the law.

## FIRST CAUSE OF ACTION

Violation of the Federal Fair Housing Amendments Act of 1988

42 U.S.C. § 3601 et seq.

(Against All Defendants)

45.    Plaintiffs allege and incorporate by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

46.    The Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. §3601 et seq., prohibits discrimination in the sale, rental, and financing of dwellings, and in other housing-related transactions, based on a number of protected characteristics, including disability.

47.     Each Plaintiff is, and at all times relevant herein was, an individual with a disability as that term is defined by the FHAA and its implementing regulations. 42 U.S.C. §3602(h); 24 C.F.R. §100.201.

48.     Defendants are, and at all times relevant herein were "persons" engaging in the "rental" of "dwellings," as those termed as defined by the FHAA and its implementing regulations. 42 U.S.C. §3602(b), (d), and (e); 24 C.F.R. §§100.20 and 100.201.

49.     The Property is a "dwelling" as that term is defined by the FHAA and its implementing regulations. 42 U.S.C. §3602(b); 24 C.F.R. §§100.20 and 100.201.

50.     The FHAA requires that housing providers make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. 42 U.S.C. §3604(f)(3)(B); 24 C.F.R. §100.204.

51.     In acting as herein alleged, Defendants have injured Plaintiff by committing discriminatory housing practices in violation of the FHAA and its implementing regulations. Defendants' unlawful conduct under the FHAA includes, but is not limited to:

a) Discriminating in the rental, or to otherwise make unavailable or deny, a dwelling to Plaintiffs because of disability, 42 U.S.C. §3604(f)(1);

b) Discriminating in the terms, conditions or privileges of housing, or in the provision of services or facilities in connection with such housing, 42 U.S.C. §3604(f)(2);

c) Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations were necessary to afford Plaintiffs equal opportunity to use and enjoy their housing, 42 U.S.C. §3604(f)(3)(B); and,

d) Coercing, intimidating, threatening, or interfering with Plaintiffs in the exercise or enjoyment of rights granted or protected by FHAA, 42 U.S.C. §3617.

52.     Each Plaintiff is an "aggrieved" person within the meaning of the FHAA. 42 U.S.C. §3602(i)(1). Plaintiffs have been denied reasonable accommodations for their disabilities, impacting their use and enjoyment of their housing.

53.     Defendants' duties under the FHAA are mandatory and long established. Defendants are deemed to have had knowledge of their duties at all times relevant herein and were provided actual notice of such duties. Defendants' failure to comply with their fair housing obligations was and is wanton, willful, malicious, fraudulent, or oppressive and/or was and is done in conscious, deliberate, callous, reckless, or blatant disregard for the federally protected rights of Plaintiffs.

54.     Pursuant to 42 U.S.C. §3613(c)(1) and (2), Plaintiffs prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

Violation of the California Fair Employment and Housing Act

California Civil Code §12955 et seq.

(Against All Defendants)

55.     Plaintiffs allege and incorporate by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

56.     The California Fair Employment and Housing Act (FEHA), Cal. Gov. Code §12955 *et seq*. prohibits discrimination in the sale, rental, and financing of dwellings, and in other housing-related transactions, based on a number of protected characteristics, including disability.

57.     Each Plaintiff is, and at all times relevant herein was, an individual with a disability as that term is defined by California law. Cal. Gov. Code §12926.

58.     Defendants are, and at all times relevant herein were, "owners" of "housing accommodations" within the meaning of the FEHA. Cal. Gov. Code §§12927(d) and (e). Each of the Defendants are also each a "person" as defined under FEHA. Cal. Gov. Code §12927(f).

59.     The Property is a "housing accommodation" within the meaning of FEHA. Cal. Gov. Code §12927(d).

60.     The failure or refusal of Defendants to make reasonable accommodations where necessary to afford Plaintiffs an equal opportunity to use and enjoy a dwelling unit and public and common use areas, or an equal opportunity to obtain, use, or enjoy a housing opportunity, expressly violates the FEHA. By failing to make reasonable accommodations for Plaintiffs, Defendants violated the FEHA Cal. Code Regs. Tit. 2, §12176(a) and (c).

61.     The failure or refusal to engage in an interactive process expressly violates the FEHA. By failing to engage in an interactive process with Plaintiffs regarding their need for reasonable accommodations, Defendants violated the FEHA. Cal. Code Regs. Tit. 2, §12177.

62.     Under the FEHA, it is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person having exercise or enjoyed, or …aided or encouraged any other person in the exercise or enjoyment of any right granted or protected by Section 12955 or 12955.1." Cal. Gov. Code. §12955.7. By coercing, intimidating, threatening, or interfering with Plaintiffs on account of their having exercised their housing rights, Defendants violated the FEHA.

63.     The FEHA was written to conform California law on the subject of fair housing to the Federal Fair Housing Act. "'FEHA in the housing area is thus intended to conform to the general requirements of federal law in the area and may

1 provide greater protection against discrimination.' In other words, the FHA
2 provides a minimum level of protection that FEHA may exceed. Courts often look
3 to cases construing the FHA, the Rehabilitation Act of 1973, and the Americans
4 with Disabilities Act of 1990 when interpreting FEHA." *Auburn Woods I*
5 *Homeowners Assn. v. Fair Employment & Housing Com.* (2004) 121 Cal.App.4th
6 1578, 1591.

7     64.    Defendants' violation of Plaintiffs' rights under FHAA, as set out in
8 Plaintiffs' First Cause of Action, also violates Plaintiffs' rights under FEHA.

9     65.    In acting as alleged herein, Defendants have injured Plaintiffs by
10 committing discriminatory housing practices, in violation of FEHA.

11     66.    Each Plaintiff is an "aggrieved" person within the meaning of the
12 FEHA. Cal. Gov. Code §12927(g). Plaintiffs have been denied reasonable
13 accommodations for their disabilities, impacting their use and enjoyment of their
14 housing.

15     67.    Defendants' duties under the FEHA are mandatory and long
16 established. Defendants are deemed to have had knowledge of their duties at all
17 times relevant herein and were provided actual notice of such duties. Defendants'
18 failure to comply with their fair housing obligations was willful and knowing
19 and/or the product of deliberate indifference.

20     68.    Pursuant to Cal. Gov. Code §12989.2, Plaintiffs pray for judgment as
21 set forth below.

**THIRD CAUSE OF ACTION**

Violation of the Americans With Disabilities Act of 1990

(42 U.S.C. §12101, *et seq*.)

(Against All Defendants)

26     69.    Plaintiffs allege and incorporate by reference, as if fully set forth
27 again herein, each and every allegation contained in all prior paragraphs of this
28 complaint.

70.    More than thirty years ago, the 101st United States Congress found that although "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination…in such critical areas as employment, **housing**, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. §12101(a) (emphasis added).

71.    In 1990 Congress also found that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals," but that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. §12101(a).

72.    In passing the Americans with Disabilities Act of 1990, which was signed into law by President George H. W. Bush on July 26, 1990 (hereinafter the "ADA"), Congress stated as its purpose:

"It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day to-day by people with disabilities."

42 USC §12101(b).

73.     As part of the ADA, Congress passed "Title III – Public Accommodations and Services Operated by Private Entities" (42 U.S.C. §12181 *et seq*.). Title III of the ADA prohibits discrimination against any person "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a).

74.     The specific prohibitions against discrimination include, *inter alia*, the following:

42 U.S.C. §12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals;"

42 U.S.C. §12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

42 U.S.C. §12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

42 U.S.C. §12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;" and,

42 U.S.C. §12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a

failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

75.     Under the ADA, "[w]hen a place of public accommodation is located in a private residence, the portion of the residence used exclusively as a residence is not covered by this part, but that portion used exclusively in the operation of the place of public accommodation **or that portion used both for the place of public accommodation and for residential purposes is covered by this part**. (b) The portion of the residence covered under paragraph (a) of this section extends to those elements used to enter the place of public accommodation, including the homeowner's front sidewalk, if any, the door or entryway, and hallways; and those portions of the residence, interior or exterior, available to or used by customers or clients, including restrooms." 28 CFR §36.207 (emphasis added).

76.     Each Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

77.     As detailed herein, Plaintiffs encountered barriers that interfered with and denied Plaintiffs the ability to use and enjoy the goods, services, privileges, advantages, and accommodations offered by Defendants at the Property.

78.     These barriers violate one or more standards of the Americans with Disabilities Act ("2010 ADA") and/or the California Building Codes ("2022 CBC").

79.     According to the U.S. Department of Justice, "a public accommodation's first priority should be to enable individuals with disabilities to physically enter its facility. This priority on 'getting through the door' recognizes that providing physical access to a facility from public sidewalks, public transportation, or parking is generally preferable to any alternative arrangements in terms of both business efficiency and the dignity of individuals with disabilities." ADA Title III Technical Assistance Manual §III-4.4500.

80.     There is no accessible route to the leasing and management office and amenities in and around the portion of Club River Run used both for the place of public accommodation and for residential purposes. There are two current routes, each inaccessible to wheelchair users such as and including Plaintiffs: one contains a large staircase with no safe and reliable platform lift provided, and the other includes long, steep paths of travel leading to a locked gate that opens outward. 2010 ADA §206; 2010 ADA §303; 2010 ADA §402; 2010 ADA §403; 2022 CBC 11B-206; 2022 CBC 11B-303; 2022 CBC 11B-402; 2022 CBC 11B-403.

81.     There is no safe and reliable platform lift complying with ASME A18.1. The existing lift is frequently broken, out of service, unreliable, and dangerous. 2010 ADA §410.1; 2022 CBC 11B-410.1; 28 C.F.R. §36.211(a); 2022 CBC 11B-108.

82.     The U.S. Department of Justice Advisory to 2010 ADA §410.1 states, in part: "The ADA and other Federal civil rights laws require that accessible features be maintained in working order so that they are accessible to and usable by those people they are intended to benefit. **Building owners are reminded that the ASME A18 Safety Standard for Platform Lifts and Stairway Chairlifts requires routine maintenance and inspections. Isolated or temporary interruptions in service due to maintenance or repairs may be unavoidable; however, failure to take prompt action to effect repairs could constitute a violation of Federal laws and these requirements**." (Emphasis added.)

83.     Defendants have failed on numerous occasions to routinely inspect and maintain their platform lift, have failed on numerous occasions to take prompt action to effectuate repairs, and will continue to fail to properly inspect, maintain, and repair the platform lift unless enjoined to do so.

84.     Under the ADA, it is illegal to unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her

having aided or encouraged any other individual in the exercise or enjoyment of" rights under the ADA. 42 U.S. Code § 12203(b). By coercing, intimidating, threatening, or interfering with Plaintiffs on account of their having exercised their housing rights, Defendants violated the ADA.

85. The barriers existed when Plaintiffs first went to the Property to apply for a lease and Plaintiffs personally encountered these barriers.

86. The barriers existed during the entirety of Plaintiffs' tenancy at the Property. Plaintiffs personally encountered and continue to encounter these barriers on many occasions.

87. These inaccessible conditions barriers denied and deny Plaintiffs full and equal access due to their disabilities because, *inter alia*, they caused and cause Plaintiffs anxiety, difficulty, discomfort, and embarrassment which persons who do not use a wheelchair for mobility do not suffer when they access the Property.

88. Plaintiffs allege that Defendants knew that the barriers prevented equal access. Plaintiffs further allege that Defendants had actual or constructive knowledge that the architectural barriers prevented equal access, and that the noncompliance with the Americans with Disabilities Act and Title 24 of the California Building Code regarding accessible features was intentional.

89. Defendants have obstructed or failed to maintain, in working and useable conditions, those features necessary to provide ready access to persons with disabilities. "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities." 28 C.F.R. §36.211(a); 2022 CBC 11B-108.

90. The State of California Department of General Servicers, Division of the State Architect (DSA) provides commentary to 2022 CBC 11B-108 as follows:

Features for accessibility must be permanently functional, unobstructed and may not be removed.  It is not sufficient to provide features such as

> accessible routes, parking, elevators, ramps or signage if those features are not maintained in a manner that enables individuals with disabilities to use them.

DSA, 2019 California Access Compliance Advisory Reference Manual, p.84.

91.    Defendants have the financial resources to remove these barriers without much expense or difficulty in order to make their property more accessible to their mobility impaired customers and visitors. The United States Department of Justice has identified that these types of barriers are readily achievable to remove.

92.    To date, Defendants refuse to remove these barriers, in violation of the law, willfully depriving disabled persons including Plaintiffs of important civil rights.

93.    On information and belief, Plaintiffs allege that Defendants' failure to remove these barriers was intentional because the barriers are logical and obvious. During all relevant times Defendants had authority, control, and dominion over these conditions and therefore the absence of accessible facilities was not a mishap, but rather an intentional act.

94.    The barriers to access are described herein without prejudice to Plaintiffs citing additional barriers to equal access by an amended complaint after inspection by Plaintiffs' Certified Access Specialist (CASp). *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011). All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as Plaintiffs, are barriers Plaintiffs have encountered many times and continue to encounter. All public accommodations must be brought into compliance with all applicable federal and state accessibility requirements.

95.     The acts and omissions of Defendants set forth herein were in violation of Plaintiffs' rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq.*

96.     The removal of each of the physical and policy barriers complained of by Plaintiffs as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of §12181 and §12182 of the ADA. Removal of each and every one of the architectural and/or policy barriers complained of herein was already required under California law. Further, on information and belief, alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to access for disabled persons per §12183 of the ADA. In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per §12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

97.     On information and belief, as of the dates of Plaintiffs' encounters at the Property and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiffs and to other mobility disabled persons in other respects, which violate Plaintiffs' rights to full and equal access and which discriminate against Plaintiffs on the basis of their disabilities, thus wrongfully denying to Plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. §12182 and §12183 of the ADA.

98.     Defendants' actions continue to deny Plaintiffs' rights to full and equal access and discriminated and continue to discriminate against them on the basis of their disabilities, thus wrongfully denying to Plaintiffs the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of the ADA, 42 U.S.C. §12182.

99.    Further, each and every violation of the Americans With Disabilities Act of 1990 also constitutes a separate and distinct violation of California Civil Code §51(f), §52, §54(c) and §54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code §54.3 and §55.

## FOURTH CAUSE OF ACTION

Violation of the Unruh Civil Rights Act

(California Civil Code §51, *et seq*.)

(Against All Defendants)

100.    Plaintiffs allege and incorporate by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

101.    California Civil Code §51 provides that physically disabled persons are free and equal citizens of the state, regardless of their medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, **disability, or medical condition** are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

California Civil Code §51(b) (emphasis added).

102.    California Civil Code §51.5 also states, in part: "No business, establishment of any kind whatsoever shall discriminate against…any person in this state on account" of their disability.

103.    California Civil Code §51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

104.    California Civil Code §52 provides that the discrimination by Defendants against Plaintiffs on the basis of their disability constitutes a violation of the general antidiscrimination provisions of §51 and §52.

105.    Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code §52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

106.    The Unruh Act applies with full force to the business of renting housing accommodations. *Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721, 731 (1982).

107.    Defendants are in the business of renting housing accommodations, and therefore must comply with the provisions of the Unruh Act.

108.    The provisions of the Unruh Act protect substantially the same rights as FHAA and are subject to the same analysis.

109.    Defendants' violation of Plaintiffs' rights under FHAA, as set out in Plaintiffs' First Claim, also violates Plaintiffs' rights under the Unruh Act.

110.    Any violation of the Americans with Disabilities Act of 1990 also constitutes a violation of California Civil Code §51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code §52.  Per Civil Code §51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

111.    The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described housing facilities and public accommodation facilities by physically disabled persons within the meaning of California Civil Code §51 and §52.

112.    The discriminatory denial of equal access to and use of the described public facilities caused Plaintiffs difficulty, discomfort, and embarrassment.

113.    Defendants' duties under the Unruh Act are mandatory and long established. Defendants are deemed to have had knowledge of their duties at all times relevant herein and were provided actual notice of such duties. Defendants' failure to comply with their fair housing obligations was willful and knowing and/or the product of deliberate indifference.

114.    As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiffs in violation of Civil Code §51 and §52, and are responsible for statutory, compensatory and actual damages to Plaintiffs, according to proof.

### FIFTH CAUSE OF ACTION

California Disabled Persons Act

(California Civil Code § 54 *et seq*.)

(*Statutory Damages and Attorney's Fees Only*)

(Against All Defendants)

115.    Plaintiffs allege and incorporate by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

116.    The Disabled Persons Act ("CDPA") provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in this state, subject to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." Cal. Civ. Code § 54.1(b)(1).

117.    The CDPA also provides that "[a]ny person renting, leasing, otherwise providing real property for compensation shall not refuse to make reasonable accommodations in rules, policies, practices, or services, when those

accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises." Cal. Civ. Code §54.1(b)(3)(B).

118.    Plaintiffs are each a person with a "disability" within the meaning of the CDPA. Cal. Civ. Code § 54(b)(1).

119.    The Property is a "housing accommodation" within the meaning of the CDPA. Cal. Civ. Code § 54.1(b)(2).

120.    Defendants are each a person renting, leasing, or otherwise providing real property for compensation, and are therefore subject to the CDPA, including the CDPA's requirement to provide reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises. Cal. Civ. Code § 54.1(b)(3)(B).

121.    By unlawfully failing to accommodate Plaintiffs' disabilities as alleged herein, Defendants violated Plaintiffs' rights under the CDPA.

122.    Claims of failure to accommodate under California Civ. Code § 54.1 are analyzed under the same standards as the analogous provisions of the FHAA. Accordingly, Defendants' violation of Plaintiffs' rights under FHAA, as set out in Plaintiffs' First Claim, also violates Plaintiffs' rights under the CDPA.

123.    A violation of the right of an individual under the Americans with Disabilities Act also constitutes a violation of the CDPA. Cal. Civ. Code §54.1(d). Accordingly, Defendants' violation of Plaintiffs' rights under the ADA, as set out in Plaintiffs' Third Claim, also violates Plaintiffs' rights under the CDPA.

124.    Defendants' duties under the CDPA are mandatory and long established. Defendants are deemed to have had knowledge of their duties at all times relevant herein and were provided actual notice of such duties. Defendants' failures to comply with their fair housing obligations were wanton, willful, malicious, knowing, fraudulent, or oppressive and/or were the product of deliberate

indifference and/or conscious, callous, reckless, or blatant disregard for Plaintiffs' fair housing and accessible public accommodation rights.

125.    Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 54.3(a), Plaintiffs pray for statutory damages and attorneys' fees under Cal. Civ. Code § 54.3(a). *Note: Plaintiffs are not invoking section 55 of the California Civil Code and are not seeking injunctive relief under the CDPA.*

## SIXTH CAUSE OF ACTION

Negligence

(California Civil Code §1714)

(Against All Defendants)

126.    Plaintiffs allege and incorporate by reference, as if fully set forth again herein, each and every allegation contained in all prior paragraphs of this complaint.

127.    Defendants owed Plaintiffs a duty to operate the Property in a manner that was free from unlawful discrimination, and to hire, train, supervise, and discipline their employees and themselves to fulfill that duty.

128.    Defendants injured Plaintiffs by want of ordinary care or skill in their ownership and management of their property and agents in violation of Cal. Civ. Code §1714.

129.    Defendants were negligent because, as described herein, they violated the FHAA, FEHA, Unruh Act, and Disabled Persons Act in their ownership and management of the Property.

130.    Defendants' negligence includes, *inter alia*, their failure to train, monitor, and supervise their agents and employees and to ensure their compliance with the FHAA, FEHA, Unruh Act, and Disabled Persons Act.

131.    Defendants were also negligent by failing to maintain and operate the Property and equipment on the Property, including but not limited to the platform

lift, which they knew or should have known to be a potentially dangerous device, so that it would be safe and reliable.

132.   Defendants' were negligent by failing to conform with the ASME A18 Safety Standard and other safety standards for platform lifts.

133.   Defendants' acts and omissions constitute negligent failure to operate the Property in conformity with the law and with accepted industry customs and standards.

134.   The FHAA, FEHA, ADA, Unruh Act and Disabled Persons Act were intended to prevent acts and omission like those of Defendants.

135.   As the direct and proximate result of the negligence of Defendants as set forth above, Plaintiffs sustained economic loss, loss of time and effort, the deprivation of the right to equal housing opportunity, emotional distress and attendant bodily and physical injuries/conditions, a loss of civil rights, frustration, difficulty, embarrassment and inconvenience.

136.   Defendants' negligence was a substantial factor in bringing about the harm suffered by Plaintiffs.

137.   Wherefore, Plaintiffs pray for relief as set forth below.

### PRAYER FOR RELIEF

Plaintiffs have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiffs are granted the relief they request.

Plaintiffs and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California.

The need for relief is critical because the civil rights at issue are paramount under the laws of the United States of America and the State of California.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.      Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees of the Property and premises to:

a) modify the above-described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities;

b) provide facilities and services usable by Plaintiffs and similarly situated persons with disabilities, and which provide full and equal access, as required by law;

c) to maintain such accessible facilities once they are provided;

d) to adopt and implement objective, uniform, nondiscriminatory standards in management of properties they own and operate, including the Property;

e) to cease any discriminatory policies;

f) to cease and refrain from taking any further unwarranted and adverse retaliatory actions against Plaintiffs as the result of this Complaint;

g) to train Defendants' employees and agents how to recognize disabled persons and accommodate their rights and needs; and,

h) to adopt and implement policies for processing reasonable accommodation requests at the Property that are consistent with FHAA and FEHA.

2.      Retain jurisdiction over the Defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of herein no longer occur, and cannot recur.

3.    Award to Plaintiffs all damages, including but not limited to actual and statutory damages as provided by law.

4.    Award to Plaintiffs punitive damages as provided by law.

5.    Award to Plaintiffs all reasonable attorney fees, litigation expenses, and costs of this proceeding as provided by law.

6.    Grant such other and further relief as this Court may deem just and proper.


DATED: October 11, 2025                    VALENTI LAW APC


                                           By:   */s/ Matthew D. Valenti*
                                                 _____
                                                 Matthew D. Valenti
                                                 Attorney for Plaintiffs
                                                 Toni Saia and Adam Cruz

1

**JURY DEMAND**

2

3      Plaintiffs hereby demand a trial by jury for all claims and issues for which a

4    jury is permitted.

5

6

7    DATED: October 11, 2025                VALENTI LAW APC

8

9                                    By:    _/s/ Matthew D. Valenti_

10                                          Matthew D. Valenti
                                            Attorney for Plaintiffs
11                                          Toni Saia and Adam Cruz

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28